**CUTLER RIDGE CORPORATION,**
**Plaintiff,**

v.

**WIND–O–FORM CORPORATION, Richard W. Masur, A. J. Churchill and Hyman Goodis, Defendants.**

**Civ. No. 64–751.**

United States District Court
S. D. Florida.

April 18, 1967.

LeBlanc & Shur, Washington, D. C., and Rosenberg, Rosenberg & Reisman, Miami, Fla., for plaintiff.

Thomas A. Horkan, Jr., Miami, Fla., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CABOT, District Judge.

This cause came on for trial before the Court sitting without a jury upon the issues presented by the pleadings herein, and the parties having introduced testimony and other proofs, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The plaintiff is Cutler Ridge Corporation, a Delaware corporation having a place of business at Miami, Florida, where it is engaged in the window frame manufacturing and sales business under the name Durwin Division of Cutler Ridge Corporation.

2. The original defendants were Wind-O-Form Corporation, a Florida corporation having a place of business at Miami, Florida; Richard W. Masur and Hyman Goodis, residents of Miami, Florida; and A. J. Churchill, a resident of Opalocka, Florida. The complaint was dismissed by stipulation against the individual defendants Masur and Churchill, Masur no longer having any connection with the defendant corporation, and Churchill being deceased. The remaining defendants are Wind-O-Form Corporation and Hyman Goodis.

3. This is a suit for infringement of Claim 1 of Puckett, et al., United States Patent No. 2,704,876, granted March 29, 1955. Defendants have filed a declaratory judgment counterclaim seeking a declaration of non-infringement and invalidity.

4. The parties stipulated in the pre-trial stipulation that the patent in suit was duly assigned to plaintiff by a recorded assignment and that the plaintiff has been the owner of said patent and the right to sue and collect for past infringements at all times material hereto.

5. It is also stipulated that both Masur and Goodis learned of the patent in suit and saw a copy thereof during 1963.

6. The invention of the patent in suit relates to a means for casting concrete window frames directly in place in a building wall, which is described in detail in the patent in suit admitted in evidence.

7. The patented invention has the following characteristics:

(a) A precast concrete window sill having a shoulder for receiving the window, which sill is preliminarily installed at the bottom of the window opening.

(b) A pair of channel-shaped jamb forms which rest upon the sill and extend vertically upward, and a separate header forming member.

(c) The jamb forms and the header form have shoulders which provide a shoulder upon the jambs and the header of the window frame which is a continuation of the shoulder on the sill.

(d) The jamb forms each have side flanges that overlie or extend back over the masonry wall at each side of the opening for the height of the wall opening.

(e) The bottom or lower ends of the jamb forms are cut away to conform to the upper surface of the sill and the jamb flanges extend down below the surface of the sill into engagement with the sill faces.

(f) The header member is shaped at its opposite ends to conform with the upper ends of the jamb members and having its opposite ends overlying and flush with the upper ends of the jamb members.

(g) A pin and plate connection between the header form and the jamb forms to mount them together and provide for assembly and disassembly.

(h) A device for clamping the flanges of the jamb forms to the concrete blocks including arms connected by link means for forcing the flanges inwardly to grasp the wall, or in released position to angle the jamb flanges outwardly.

8. The patented invention achieved sales of $483,000 in 1959 and it is stipulated that it accounted for at least approximately 50% of all concrete window frames installed in Dade County in that year. The defendants stipulate that the plaintiff's patented system made obsolete and displaced the Livesay type precast concrete window frame system.

9. After the plaintiff had placed its product on the market, the individual defendants, Richard W. Masur, a seven-year employee of the plaintiff, fully familiar with the plaintiff's business and equipment, and Hyman Goodis, a long-term customer and sales agent of the plaintiff, and A. J. Churchill, formed the defendant corporation, which was incorporated on April 29, 1964, with Masur, Goodis and Churchill as its officers.

10. About March 29, 1964, Masur contacted W. L. Tabbutt, a foreman at Jones Boatyard of Miami, a company that had previously manufactured the patented forms of the plaintiff, as Masur knew

from his employment with plaintiff. Masur requested Tabbutt to manufacture forms for making poured-in-place concrete window frames, and approximately a week later sent Tabbutt a set of plaintiff's patented forms, including header, jambs and sill, from which Tabbutt was to obtain details and measurements. Tabbutt produced such a set of forms using bolt-type clamps in the jamb form flanges and poured a window frame on the Jones Boatyard premises.

11. This first set of forms was delivered to Dwyer-Baker, also of Miami, Florida, who had earlier manufactured the plaintiff's patented window forms in quantity, a fact which was known to Masur by virtue of his dealings with Dwyer-Baker on behalf of plaintiff.

12. In the summer of 1964, Masur visited Dwyer-Baker with that first set of forms and requested Gilbert L. Russell, the plant manager to speed up manufacture of forms for the defendants. Dwyer-Baker manufactured the window forms in quantity for defendants, providing approximately the same tolerances as found in plaintiff's commercial forms.

13. The corporate defendant thereupon made its window forms commercially available in the same Dade County area wherein plaintiff leased its window forms, on a rental charge system substantially the same as that used by plaintiff, initially serving mostly prior customers of plaintiff, and using as a brochure or flier depicting defendants' forms and their sizes, a photographic reproduction of the brochure and size table of plaintiff.

14. It is stipulated that until the corporate defendant made its accused forms commercially available, the plaintiff was the only source of commercial forms for poured-in-place concrete window frames, and that the corporate defendant is the only company other than plaintiff to supply this type of poured-in-place window form utilizing precast sill, jamb forms and header forms.

15. Defendants relied upon certain prior patents in their claim of invalidity; however, they produced no testimony with respect thereto, and the Court finds that defendants have not proven invalidity by virtue of anything contained in these prior patents.

16. Defendants also urge as a basis for invalidity an alleged prior public use of certain admittedly unavailable forms by the deceased defendant Churchill and later by one A. W. Bennett, offering in support thereof the deposition testimony of Churchill and Bennett. However, counsel for defendants in his pretrial hearing statement conceded that the alleged Churchill-Bennett use was different from that of both plaintiff and defendants; that it used a two-piece rather than a three-piece form system; and that it did not use a precast sill. Defendants also stipulated that the forms which Churchill used and the manner in which he used them were the same as whatever the Bennett testimony might prove that Bennett did. Bennett testified that no precast sill was used, that the forms were L-shaped, used with a poured-in-place sill, and that due to the construction of the forms they could not be used otherwise. This was corroborated by plaintiff's witness Schillinger, who made an after-the-fact examination of the structure allegedly built by Churchill and of pictures of the same and testified that there was no evidence of precast sills.

17. Defendants have not produced clear and convincing evidence of a prior public use of the invention defined in the claim of the patent in suit, nor of any window frame system which would teach or make obvious the patented invention.

18. The parties stipulated that the defendants used two types of window forms, the first being that illustrated in plaintiff's Exhibits 14A–D, and the second being that illustrated in plaintiff's Exhibits 15 and 16.

19. Both types of defendants' forms include most of the essential elements of plaintiff's patented forms enumerated in Finding 7 of the foregoing.

20. The evidence establishes that the defendants' first type of forms of plaintiff's Exhibit 14A–D is substantially the

same in construction, mode of operation, and result as the patented device as set out in Claim 1 here in suit and infringes that claim.

21. The defendants' second type of forms, stipulated to be illustrated in plaintiff's Exhibits 15 and 16, differ from defendants' first type by a modification of the pin and plate joint between the header and jamb forms, viz., instead of the plates lying in vertical planes and the pins in horizontal planes, the pins lie in vertical planes and the plates in horizontal planes. It is stipulated that the function and result is the same despite the change in form, but defendants urge this modification in plate and pin form in their non-infringement argument.

22. However, the claim here in suit is not restricted to vertical plates and horizontal pins but may include horizontal plates and vertical pins of the type in defendants' second type forms. Since the mode of operation and result of defendants' second type of forms of plaintiff's Exhibits 15 and 16 is the same as that of the patented forms, infringement of Claim 1 is made out.

23. The evidence establishes that the second type of forms in plaintiff's Exhibits 15 and 16 is substantially the same in construction, mode of operation and result as the patented device set out in Claim 1 here in suit and infringes that claim.

## CONCLUSIONS OF LAW

A. This Court has jurisdiction of the parties and of the subject matter of this cause of action and venue herein is proper.

B. Plaintiff is the owner of the entire right, title and interest in and to the Puckett, et al., Patent No. 2,704,876, here in suit, and all rights of recovery thereunder.

■ C. While commercial success is no substitute for patentable invention, it is evidence in support thereof.

■ D. The Puckett, et al., patent disclosure is clear and complete and discloses an operative device in compliance with applicable patent law. The Puckett, et al., Claim 1 here in suit is in compliance with applicable patent laws. There is a statutory presumption of validity of the Puckett, et al., patent in these regards by virtue of its issuance by the Patent Office and this presumption has not been overcome by defendants.

■ E. Infringement exists when the accused device and the patented device as set out in the claim in suit are substantially the same in construction and perform in substantially the same way to obtain the same result.

F. Defendants, in securing their accused forms, copied and derived from plaintiff's patented forms all eight of the essential elements enumerated in Finding 7 hereinabove.

■ G. The various defenses pleaded by the defendants are without merit, and the Puckett, et al., Patent No. 2,704,876, issued March 29, 1955, is valid and infringed by defendants.

H. The defendants are free to use the structures shown in the prior art patents or the alleged prior use, so that the enforcement of an injunction granted herein cannot injure the defendants in such use.

I. The Puckett, et al., patent in suit is valid and defendants have infringed Claim 1 by making, using or selling the structures of plaintiff's Exhibits 14A–D, 15 and 16.

J. Plaintiff is entitled to judgment in accordance with these findings of fact and conclusions of law, and defendants should be enjoined in accordance therewith.

K. The counterclaim should be dismissed.

L. Plaintiff shall submit a suggested form of judgment within ten (10) days from the date hereof.